# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVON SUMMERS, | Case No. 1:21-cv-01166-FRS (BAM) (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION |
| v. | |
| PFEIFFER, | FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| Defendant. | |
| | (ECF No. 10) |
| | **FOURTEEN (14) DAY DEADLINE** |

Plaintiff Travon Summers ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff's first amended complaint is currently before the Court for screening.  (ECF No. 10.)

**I.     Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

///

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II.    Allegations in Complaint

Plaintiff is currently housed at Kern Valley State Prison ("KVSP") in Delano, California, where the events in the complaint are alleged to have occurred. Plaintiff names as defendants: (1) Christian Pfieffer, Warden, KVSP; (2) Anderson, Sergeant, KVSP; (3) Rodriguez, Correctional Custody Officer, KVSP; and (4) John Doe, Prison Facility Building Maintenance, KVSP.

Plaintiff alleges as follows:

From the beginning of December 2022, Plaintiff and his cellmate consistently complained of rusty, smelly, dirty water dropping from the cell ceiling, standing within the cell ceiling light fixtures, and flowing from the corners of the concrete walls and all around the toilet/sink area of the cell/living quarters. Both Plaintiff and his cellmate submitted grievances after just complaining to 2nd and 3rd watch correctional custody building staff informally. Plaintiff and his cellmate suffered these conditions for more than two weeks, only resulting in correctional custody building staff generating a work order. Each time Plaintiff complained about cleaning out the water, building correctional custody staff would perform an aggressive, excessive clothed body

2

search.  This back and forth went on for more than 10 days before the institution prison facility building maintenance finally came to troubleshoot the problem.

Plaintiff was then told by Defendant Rodriguez to not discuss the problems with the cell with the contracted institutional facility maintenance custodial plumber (Defendant John Doe). Plaintiff was contained in the Building C Section shower for over 2 hours while Defendant John Doe plumber attempted to complete his task, only to be ordered to return to a cell full of raw sewage, and rusty, smelly water.  Plaintiff told Defendant Rodriguez to call a sergeant as he could not continue to live/occupy this cell.

The sergeant never responded to the building or came to address the situation.  Plaintiff and his cellmate began to use their state-issued sheets, blankets, and clothing to soak and mop up all the standing water in the cell, only to learn that the building custody officials, along with Defendant Rodriguez, would not summon the institutional prison facility laundry custodian to replace and/or exchange the blankets and sheets.  Plaintiff and his cellmate were without sheets and blankets for days at a time, or until Plaintiff was able to hustle up blankets and sheets from other inmates in the building section.

Defendant Rodriguez was the only staff member that Plaintiff could address daily, as he worked the building consistently, sometimes on both 2nd and 3rd watches.  Not once did Defendant Rodriguez provide cleaning supplies or solution to the problem.  Defendant Rodriguez denied requests to move to another cell.  All other correctional officers in the building followed his lead.

Plaintiff was cold throughout the night and under mental and physical distress from the constant running water and dripping water from the ceiling's light fixture.  The cell floor was wet all the time because of constant problems with the sink/toilet area.  Plaintiff now suffers migraine headaches as black mold starts to accumulate and gather within the concrete walls of the cell ceiling and floor.  This caused even more irritation to Plaintiff's allergies, resulting in more anxiety and inmate grievances.

Finally, Defendant Sergeant Anderson arrived at Plaintiff's cell front for a 602 appeal grievance interview and to observe the problem.  After viewing Plaintiff's living condition,

3

Defendant Anderson told Plaintiff that this was out of his hands and the prison is on modified program due to the COVID-19 virus.  Plaintiff asked what social distancing had to do with the condition of his cell, and Defendant Anderson just curtailed the interview and left the circumstances as they were.  Defendant Anderson threatened Plaintiff that if he or his cellmate refused to go back into the cell they were assigned to, they would be written up for interference with official's duties.

The next day Defendant John Doe returned to Plaintiff's cell front with Defendant Rodriguez only to turn off the cell water.  Plaintiff is now months into this situation and when it rains outside it causes the water to leak into the cell and run next to and in the cell plugs and appliance fixtures.  Plaintiff alleges that this disregard for Plaintiff's welfare is unconscionable and would include the institution, including Defendant Warden Pfeiffer, as the Chief Executive official overseeing the activities, conduct, and functioning of all staff demeanor as well as the custody, treatment, training, and discipline of all inmates and staff and custodians.

Defendant John Doe was instructed to turn off the water due to a busted pipe and because of the constant complaining.  Building staff would just step in and walk through the standing water for more than six months.  Defendant Rodriguez and a number of other correctional officials allowed this to continue under their official capacity rather than moving Plaintiff out of the cell.  Officers only stated that there were no cell moves because of COVID-19, leaving Plaintiff and his cellmate without running hot or cold water or a working sink or proper toilet.  Plaintiff could only be allowed a shower every 3 days and had to rely on custody staff to give them permission to fill up a gray industrial trash can with water at the shower in order to dip a bucket in to use to flush the toilet.  Sometimes Plaintiff would have to create a disturbance in order to get custody staff on board to flush the toilet daily, as the cell smelled of excrement, rotten, rusty water.  Plaintiff developed a skin rash from the constant cleaning, mopping, and soaking up dirty, foul smelling water.

As this was during COVID, no cleaning supplies were provided.  This occurred for more than one year.  The failure to correct the problem had a grave effect on Plaintiff's mental health, and Plaintiff had stomach/abdomen pain from throwing up constantly.

4

Plaintiff demands judgment in his favor and monetary damages.

**III.    Discussion**

**A.    Linkage Requirement**

The Civil Rights Act under which this action was filed provides:

Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Here, Plaintiff's complaint fails to link some of the alleged events to any defendant. For example, Plaintiff alleges that when he first complained to staff about the dirty water in his cell, he was subjected to aggressive, excessive clothed body searches. However, Plaintiff does not identify any of the staff members who performed these searches. Plaintiff must provide a link between the alleged violations of his rights and the actions or inactions of a particular defendant.

**B.    Supervisory Liability**

Insofar as Plaintiff is attempting to sue Defendant Warden, or any other defendant, based on his supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th

5

Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).

Here, Plaintiff has failed to establish that Defendant Warden, or other supervisor, participated in or directed any constitutional violation or that he implemented a policy so deficient that it was the moving force of any constitutional violation.  Plaintiff's conclusory allegations that Defendant Warden was responsible for overseeing the conduct, training, and discipline of all staff and inmates, without more, fails to demonstrate that Defendant Warden was personally involved or to establish any supervisory liability.

### C.    Eighth Amendment – Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety.  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted).  To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference . . ." *Labatad v. Corrs. Corp. of Amer.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

The deliberate indifference standard involves both an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834.  Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).  The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth

6

Amendment claim. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer*, 511 U.S. at 835; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

Objectively, extreme deprivations are required to make out a conditions-of-confinement claim and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Although the Constitution "'does not mandate comfortable prisons,'" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time," *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989).

Courts have long recognized that exposure to environmental conditions which pose a health risk, either present or future, can support a claim under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 3335 (1993) (environmental tobacco smoke); *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (asbestos); *Carter v. Smith*, No. C–13–4373 EMC (pr), 2015 WL 4322317, at *7–11 (N.D. Cal. 2015) (lead paint and asbestos); *Yellen v. Olivarez*, No. CIV S–94–1298 GEB DAD P, 2012 WL 3757373, at *8 (E.D. Cal. 2012) (contaminated water), *adopted in full*, 2012 WL 4210030 (E.D. Cal. 2012); *Rouse v. Caruso*, No. 06–CV–10961–DT, 2011 WL 918327, at *24–25 (E.D. Mich. 2011) (contaminated water), *adopted in full*, 2011 WL 893216 (E.D. Mich. 2011). In addition, a "lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1314 (9th Cir.), *opinion amended on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995). *See also Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020) (finding no qualified immunity to officers who housed inmate "in cells teeming with human waste" for six days).

At the pleading stage, Plaintiff states a cognizable claim for unconstitutional conditions of confinement against Defendants Rodriguez and Anderson for failing to address the dirty standing water in Plaintiff's cell. Plaintiff alleges that he repeatedly notified Defendants Rodriguez and Anderson of the problem over the course of a year. However, Plaintiff fails to allege that

Defendants Pfeiffer was personally involved in failing to address the issue, as discussed above. Plaintiff also fails to state a claim against Defendant John Doe, who Plaintiff alleges attempted to but failed to address the issue and later turned off the water to the cell after being directed to do so.

Plaintiff also fails to state a claim for relief related to the failure to exchange or provide new blankets and sheets after Plaintiff and his cell mate used them to soak up the dirty water, as Plaintiff alleges that these deprivations were only temporary and Plaintiff was able to obtain blankets and sheets from other inmates.  Plaintiff also fails to state a claim related to a lack of running water in the cell.  Plaintiff does not allege how long the water was turned off in the cell, and also alleges that although inconvenient, staff permitted him to obtain water to flush the toilet by using a bucket.

**IV.     Conclusion and Recommendation**

Based on the above, the Court finds that Plaintiff's complaint states cognizable claims against Defendants Rodriguez and Anderson for unconstitutional conditions of confinement in violation of the Eighth Amendment for failing to address the dirty standing water in Plaintiff's cell.  However, Plaintiff's complaint fails to state any other cognizable claims for relief against any other defendants.  Despite being provided with the relevant pleading and legal standards, and given multiple opportunities to amend, Plaintiff has been unable to cure the deficiencies.  Further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Clerk of the Court is HEREBY DIRECTED to randomly assign a District Judge to this action.

Furthermore, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's first amended complaint, filed February 7, 2025, (ECF No. 10), against Defendants Rodriguez and Anderson for unconstitutional conditions of confinement in violation of the Eighth Amendment for failing to address the dirty standing water in Plaintiff's cell; and

2. All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.**  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **January 20, 2026**                    /s/ *Barbara A. McAuliffe*          _

UNITED STATES MAGISTRATE JUDGE

9